THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAINIER BEACH DEVELOPMENT COMPANY, LLC, a Washington limited liability company; EXCEL HOMES, INC., a Washington corporation; and JAVIER LUNA and DONALD ALLEN, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>KING COUNTY, a political subdivision of the State of Washington,<br><br>Defendant. | CASE NO. C16-0822-JCC<br><br>ORDER |

This matter comes before the Court on Defendant King County's motion for summary judgment (Dkt. No. 20). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and GRANTS the motion in part and DENIES it in part for the reasons explained herein.

**I.  BACKGROUND**

This section, as is appropriate on summary judgment, presents the facts in a light most favorable to the non-moving party.

In late 2009, Plaintiff Rainier Beach Development Company, LLC ("RBDC") purchased

property located at South 115th Place in Seattle ("the Property"). (Dkt. No. 26 at 1; Dkt. No. 27 at 1.) The intended project at the Property was five single family homes with associated site development work and construction of a private road and sidewalks. (Dkt. No. 21 at 2.) Non-party Cooper Development started the project in 2004. (*Id.*) Cooper applied for building permits for the five single family homes and a grading permit, which would authorize construction of the private road, a retaining wall, and sidewalks, as well as restoration of a wetland and stream buffer on one of the lots. (*Id.*) Cooper obtained building permits in 2005 and 2006, but it encountered financial problems in 2009 and declared bankruptcy. (*Id.* at 3.)

Frontier Bank foreclosed on the Property and sold it to RBDC, which became the project applicant. (*Id.*) Before purchasing the Property, RBDC received assurances from Defendant King County ("the County") that if RBDC paid certain debts owed by Cooper, it would receive a permit to start work within 90 days. (Dkt. No. 27 at 2.)

Plaintiff Excel Homes, Inc. and its owners, Plaintiffs Javier Luna and Donald Allen, worked as the contractors on the project. (Dkt. No. 26 at 2.) Their aim was to complete what Cooper had started, including all private roadwork, utilities, and improvements. (*Id.*) However, according to Plaintiffs, the County has prevented completion of the project by treating Plaintiffs unfairly and discriminatorily. (*See* Dkt. No. 1-2 at 5.)

For example, in 2011, Plaintiffs put in an erosion control rockery after obtaining permission from the County to build it in that location. (Dkt. No. 28 at 2.) However, in August 2014, the County issued a set of stop work orders alleging that Plaintiffs did not have permission to build the rockery. (*Id.*) The stop work orders were not limited to the rockery, but stopped work on the whole site. (*Id.*) Then, later that year, the County required Plaintiffs to reopen one of the lots and make engineering changes that were not originally required. (*Id.* at 3.) The County also required Plaintiffs to obtain a new grading permit that would not have been required at the time. (*Id.*) To this day, Plaintiffs are still prohibited from working on the rockery and have been required to obtain a wetlands biologist to make a report on the area. (*Id.*) Plaintiffs have appealed

the stop work orders, but no decision has yet been issued. (*Id.*)

On February 25, 2014, Luna and an RBDC representative met with Fred White, then-project lead for the County. (Dkt. No. 25 at 1.) White shared troubling information with them, including that White felt the County intentionally thwarted the project; former County employee John Kane shared information about Luna's background in an effort to discredit Luna; the County added unnecessary permit conditions to create extra work and cost for Plaintiffs; White felt Excel Homes had in fact done excellent work and exceeded code requirements; and the County had "bizarrely" lost Plaintiffs' project file multiple times. (Dkt. No. 26 at 3-4.)

On July 16, 2014, Luna submitted a claim for damages to the County. (Dkt. No. 26 at 2.) The claim alleged that the County made Plaintiffs redo Cooper's work and frequently changed the requirements for obtaining permits. (*Id.* at 16.) According to the claim, the County "blocked [Plaintiffs] at every turn. For example, as an issue would arise, [Plaintiffs] would suggest an approach, the [County] would require a different approach, [Plaintiffs] would do the work, and then (after a huge expenditure of time and money) the [County] would ultimately say that [Plaintiffs'] original approach was the correct one." (*Id.*) The claim listed a number of examples, including issues with the project's retaining wall, water district, service road, turnaround, and sidewalk. (*Id.* at 16-17.) Less than three weeks later, the stop work orders issued. (*Id.* at 6.)

On May 9, 2016, Plaintiffs sued the County, alleging: (1) intentional interference with business relations; (2) negligence; (3) violations of Washington Revised Code chapter 64.40; (4) violations of 42 U.S.C. § 1983; (5) breach of implied contract and promissory estoppel; (6) negligent misrepresentation; and (7) unlawful discrimination. (Dkt. No. 1-2 at 7-10.) Their complaint asserts that, "[r]ather than honor its commitment and grant RBDC a grading permit within 90 days, [the] County [has] engaged in a consistent pattern of capricious, improper, unfair, unreasonable and discriminatory actions against" Plaintiffs. (*Id.* at 5.)

The County now moves for summary judgment, arguing that it granted Plaintiffs their grading permit in August 2012 and thus all claims are time-barred. (Dkt. No. 20 at 1-2.)

## II. DISCUSSION

### A. Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Analysis

The County argues that Plaintiffs' claims are barred by the relevant statutes of limitations because "the County issued final approval for all work under the grading permit by August 1, 2012"—almost four years before Plaintiffs filed suit. (Dkt. No. 20 at 1.) Plaintiffs counter that their claims "are not limited to the *issuance* of a grading permit" and that, from 2009 to 2016, the County systematically and unlawfully interfered with their efforts to develop the Property. (Dkt. No. 23 at 1-2; Dkt. No. 26 at 6.) Plaintiffs further argue that their claims are timely under the discovery rule and the continuing violations doctrine. (Dkt. No. 23 at 2.)

#### 1. Conduct Alleged

The Court first notes that the record is quite unclear as to the timeframe for the problematic conduct alleged by Plaintiffs.

First, the complaint states that RBDC acquired the Property in fall of 2009 and received assurances from the County that it would receive a grading permit within 90 days. (Dkt. No. 1-2 at 5.) Beyond this, no specific dates are alleged. Plaintiffs arguably frame their factual allegations with respect to the grading permit, stating: "Rather than honor its commitments and grant RBDC a grading permit within 90 days, [the] County [has] engaged in a consistent pattern of capricious, improper, unfair, unreasonable and discriminatory actions against RBDC and Javier Luna. Examples include: . . . . ." (*Id.*) The examples that follow make up the majority of Plaintiffs' factual allegations, including that the County conditioned its approval of a grading permit on RBDC's acquisition of wetlands adjacent to the Property and an easement from an adjacent landowner; frequently changed permit requirements, causing extra work and cost for Plaintiffs; withheld files pertaining to the project; allowed representatives with animus toward Plaintiffs to evaluate the project; required Plaintiffs to go beyond code requirements to obtain permits; and intentionally delayed the project. (*Id.* at 6.) Moreover, while the complaint explicitly references the grading permit, it also alleges that the County "refused to grant permits" and "inappropriately ma[de] permitting decisions"—both in the plural—and mentions Plaintiffs' building permit and land use application. (Dkt. No. 1-2 at 6- 8.)

Given the allegations and evidence presented on summary judgment, one can determine that at least some of these examples occurred after August 2012, although this would have been impossible to tell from the face of the complaint alone. Furthermore, the record suggests that the grading permit—at least as Plaintiffs understood it—may not actually have been granted in August 2012. (*See* Dkt. No. 26 at 15-16) (Luna 2014 damages claim stating that the County "still has not issued a final grading permit").

Under these circumstances, the Court can conclude that Plaintiffs allege conduct pertaining to the permit issued in 2012, as well as conduct beyond. The Court admonishes Plaintiffs that the pleading standard is heightened in federal court and their current complaint comes dangerously close to failing to state a claim. However, given the ongoing interactions

between the parties and continued issues with the project, the County's attempt to frame this entire case as tied to the 2012 grading permit was disingenuous.

2. Applicable Limitations Periods

All but one of Plaintiff's claims are subject to a three-year statute of limitations. *See* Wash. Rev. Code § 4.16.080; *Wilson v. Garcia*, 471 U.S. 261, 280 (1985) (section 1983); *City of Seattle v. Blume*, 947 P.2d 223, 226 (Wash. 1997) (torts); *Karpstein v. Allianz Life Ins. Co. of N. Am.*, 2016 WL 6432535 at *2 (W.D. Wash. Oct. 31, 2016) (oral contracts); *Antonius v. King Cty.*, 103 P.3d 729, 732 (Wash. 2004) (discrimination). There is an additional 60-day period for any tort claims. Wash. Rev. Code § 4.96.020(4).

Plaintiffs' other claim, violation of Washington Revised Code chapter 64.40, has a shorter timeframe. This chapter creates a cause of action where an agency acts arbitrarily, capriciously, unlawfully, or in excess of its lawful authority,[1] or if it fails to act within time limits established by law.[2] Wash. Rev. Code § 64.40.020(1). It requires any action to be commenced within 30 days after exhausting administrative remedies. Wash. Rev. Code § 64.40.030.

The County argues that this claim is untimely, because it should have been filed within 30 days of the issuance of the grading permit. (Dkt. No. 20 at 7-8.) This argument attempts to fit a square peg into a round hole. Plaintiffs do not object to the issuance of the 2012 permit, but to the County's conduct preceding and following such issuance. This includes the 2014 stop work orders, the appeal of which—according to Plaintiffs' evidence—has not yet been resolved. From this record and the arguments presented, the Court cannot conclude at this time that this claim is time-barred.

The County's motion is DENIED as to the chapter 64.40 claim.

---

[1] The agency must have known, or reasonably should have known, that its acts were unlawful or in excess of authority. Wash. Rev. Code § 64.40.020(1).

[2] The County argues that its conduct did not constitute an "act" under the statutory definition. (Dkt. No. 20 at 7.) However, the County also states that, "[i]n the interest of judicial economy, this motion focuses solely on the statute of limitations issue" and not the substantive issues at play. (*Id.* at 2 n.1.) Thus, the Court will not consider this substantive argument.

ORDER
PAGE - 6

3. <u>Three-Year Limitations Period: Discovery Rule & Ongoing Violations</u>

Turning to the claims with a three-year statute of limitations, the County argues that all are time-barred because the grading permit was issued in August 2012 and Plaintiffs did not bring this suit until May 2016. (Dkt. No. 20 at 6.) As noted above, Plaintiffs' claims are not so narrowly focused. However, the County is correct that some of its challenged conduct took place more than three years prior to this suit's filing. Plaintiffs maintain that this conduct is still actionable under the discovery rule and the ongoing violations doctrine. (Dkt. No. 23 at 2.)

*Discovery Rule*: Under the discovery rule, a cause of action does not accrue until the plaintiff discovers or reasonably should have discovered all of the essential elements of his or her claim. *Green v. Am. Pharm. Co.*, 960 P.2d 912, 915 (Wash. 1998). This rule does not require a plaintiff to understand the legal consequences of the claim, but whether he or she discovered the salient facts regarding the claim. *Id.*

Here, Plaintiffs maintain that they did not realize that the delays, extra requirements, and added costs were attributable to the County's wrongful conduct until they met with White in 2014. (Dkt. No. 23 at 10-11.) The County responds that Plaintiffs were actually aware of the relevant facts prior to this meeting. (Dkt. No. 31 at 6.) For example, the County notes, Luna wrote an email to White in 2011 complaining of "unjustifiable delays and significant expenses that have since been proven unnecessary and even contrary to the [County's] normal procedures and jurisdictional guidelines" and that the County employees "acted with bias against this project's successful completion and . . . abused their positions of authority." (Dkt. No. 31 at 6; Dkt. No. 32-4 at 2.) In addition, Plaintiffs' complaint alleges that from the beginning of their involvement in the project, the County systematically and unlawfully interfered with their efforts to develop the Property. (Dkt. No. 23 at 1-2; Dkt. No. 26 at 6.)

Thus, although the conversation with White confirmed Plaintiffs' suspicions about the County's alleged bad acts, it did not lead Plaintiffs to discover something fundamentally new about the elements of their claims. "[T]he law does not require a smoking gun in order for the

statute of limitations to commence." *Giraud v. Quincy Farm and Chemical*, 6 P.3d 104, 109 (Wash. Ct. App. 2000).

Accordingly, the Court declines to apply the discovery rule to Plaintiffs' claims.

*Ongoing/Continuing Violations Doctrine*: The continuing violations doctrine is "an equitable exception to the statute of limitations, allowing a plaintiff to recover damages for otherwise time-barred acts." *Antonius*, 103 P.3d at 732. Under this doctrine, the "statute of limitations runs from the date each successive cause of action accrues as manifested by actual and substantial damages." *Fradkin v. Northshore Util. Dist.*, 977 P.2d 1265, 1269 (Wash. Ct. App. 1999). The doctrine has been applied by Washington courts in hostile work environment cases, *Antonius*, 103 P.3d at 736 (applying the rule set forth in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002)), as well as nuisance and trespass claims, *see Pac. Sound Resources v. Burlington N. Santa Fe Ry. Corp.*¸125 P.3d 981 (Wash. Ct. App. 2005). However, Washington courts have thus far declined to extend the doctrine further. *See Cox v. Oasis Physical Therapy, PLLC*, 222 P.3d 119, 127 (Wash. Ct. App. 2009).

Plaintiffs maintain that the doctrine applies more widely, citing *Ballard v. Popp*, 174 P.3d 681 (2007) and *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002). (Dkt. No. 23 at 12.) However, the portion of *Ballard* addressing the doctrine is unpublished and even states specifically that, "[i]n Washington, the continuing violation doctrine has been applied in the context of *workplace discrimination*." *Ballard*, 174 P.3d at ¶¶ 18-20 (emphasis added). And in *RK Ventures*, the Ninth Circuit declined to apply the continuing violations doctrine, noting that *Morgan* "overruled previous Ninth Circuit authority holding that, if a discriminatory act took place within the limitations period and that act was 'related and similar to' acts that took place outside the limitations period, all the related acts—including the earlier acts—were actionable as part of a continuing violation," with the exception of workplace discrimination claims. *RK Ventures*, 307 F.3d at 1061, 1061 n.13.

Thus, the Court declines to apply the continuing violations rule to Plaintiffs' claims.

Because these doctrines do not operate to extend the limitations period, the Court concludes that claims based on the County's conduct prior to May 9, 2013[3] are time-barred. However, claims based on later conduct are still actionable.

### 4. Discovery and Mediation

Finally, Plaintiffs argue that the County's motion should be denied because discovery is at a preliminary stage and the County did not comply with the Court's mediation order. (Dkt. No. 23 at 2.)

Regarding discovery, Federal Rule of Civil Procedure 56(d) allows the Court to defer consideration of, or deny, a summary judgment motion if the opposing party cannot present facts essential to justify its opposition. Here, Plaintiffs complain that the County failed to respond to discovery but do not explain how additional information would help them defend this particular motion. (*See* Dkt. No. 23 at 13-14.) The Court cannot conceive of further evidence that would contradict the procedural issues requiring dismissal of certain claims. This argument is rejected.

The Court similarly rejects the argument as to mediation. While the Court encourages parties to amicably work out issues, the failure to do so does not alone warrant dismissal under these circumstances, particularly given the County's position that it cancelled mediation in reaction to Plaintiffs' failure to provide promised information. (*See* Dkt. No. 32 at 1.)

## III. CONCLUSION

For the foregoing reasons, the County's motion for summary judgment (Dkt. No. 20) is GRANTED in part. To the extent Plaintiffs' claims are premised on County conduct preceding March 10, 2013 or May 9, 2013 (depending on whether the 60-day period for tort claims applies), they are time-barred and DISMISSED with prejudice. The County's motion is otherwise DENIED.

//

//

---

[3] Or March 10, 2013, if the additional 60-day period for tort claims applies.

DATED this 16th day of August, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE